1  Gene J. Stonebarger, State Bar No. 209461
   gstonebarger@stonebargerlaw.com
2  Richard D. Lambert, State Bar No. 251148
   rlambert@stonebargerlaw.com
3  Elaine W. Yan, State Bar No. 277961
   eyan@stonebargerlaw.com
4  STONEBARGER LAW
   A Professional Corporation
5  75 Iron Point Circle, Ste. 145
   Folsom, CA 95630
6  Telephone (916) 235-7140
   Facsimile (916) 235-7141

7
8  Mark L. VanBuskirk, State Bar No. 190419
   mvanbuskirk@wkalaw.com
9  R. Duane Westrup, State Bar No. 58610
   moats@westrupklick.com
10 WESTRUP KLICK LLP
   444 W. Ocean Blvd., Suite 1614
11 Long Beach, CA 90802
   Telephone (562) 432-2551
12 Facsimile (562) 435-4856

13 *Interim Co-Lead Counsel for Plaintiffs*

14             UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16              SAN FRANCISCO DIVISION

17

18 KIMBERLEY MAIN, an individual, on behalf ) Consolidated Case No. C 11-01919 JSW
   of herself and all others similarly situated, )
19                                             ) Consolidated with:
                Plaintiffs,                    ) Case No. C 11-02001 JSW
20                                             ) Case No. C 11-02893 JSW
        v.                                     ) Case No. C 11-02659 JSW
21                                             )
   WAL-MART STORES, INC., a Delaware          ) **MEMORANDUM OF POINTS AND**
22 corporation, and DOES 1 through 50 inclusive ) **AUTHORITIES IN SUPPORT OF**
                                               ) **PLAINTIFF'S UNOPPOSED**
23              Defendants.                     ) **MOTION FOR FINAL APPROVAL**
                                               ) **OF CLASS ACTION SETTLEMENT**
24                                             )
                                               ) Date:    May 24, 2013
25                                               Time:    9:00 a.m.
                                                 Ctrm.:   11, 19th Floor
26                                               Judge:   Hon. Jeffrey S. White
27
28

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL

**TABLE OF CONTENTS**

I.   BACKGROUND .................................................................................................. 1

   A.  The Alleged Violation and Litigation ....................................................... 1

   B.  The Main Action ...................................................................................... 1

   C.  The Nelson Action ................................................................................... 1

   D.  The Grikavicious Action .......................................................................... 2

   E.  The Landeros Action ................................................................................ 2

   F.  Court's Order Consolidating the Main, Nelson, Grikavicious and
       Landeros Actions ..................................................................................... 2

   G.  The Heon Action ...................................................................................... 3

   H.  Settlement Negotiations and Mediation .................................................. 3

II.  THE PROPOSED SETTLEMENT .................................................................... 3

   A.  Class Benefits .......................................................................................... 3

   B.  Cy Pres Beneficiaries .............................................................................. 4

   C.  Notice of the Settlement to Class Members ........................................... 5

       1. In-Store Notice ................................................................................... 6

       2. Notice by Publication .......................................................................... 6

       3. Website Notice ................................................................................... 6

   D.  Objections to and Exclusions from the Settlement ................................. 6

   E.  Payments to Named Plaintiffs Not Serving as Class Representatives ...... 7

   F.  Attorneys' Fees, Costs and Incentive Fee Awards .................................. 7

III. ARGUMENT ...................................................................................................... 7

   A.  The Court Should Approve the Proposed Settlement Because a
      Class Exists, and the Proposed Settlement is Fair, Adequate, and
      Reasonable .............................................................................................. 7

       1.  A Class Exists, Satisfying the First Prong of the

Settlement-Approval Analysis ................................................................ 8

    a. Numerosity ................................................................................. 8

    b. Commonality .............................................................................. 8

    c. Typicality ................................................................................... 9

    d. Adequacy of Representation ....................................................... 9

    e. Common Questions Predominate ................................................. 9

2. The Proposed Settlement is Fair, Adequate and Reasonable ........................ 10

    a. The strength of Plaintiffs' case and the risk, expense,
       complexity, and likely duration of further litigation ....................... 10

    b. The amount or type of relief offered in
       Settlement ................................................................................. 13

    c. The stage of litigation ................................................................. 13

    d. The experience and views of Class Counsel .................................. 14

    e. The presence of a governmental participant ................................. 14

    f. The reaction of the Class Members ............................................. 14

    g. Lack of collusion between the Parties .......................................... 15

B. The Class Received Adequate Notice of the Settlement ............................... 15

IV.    CONCLUSION ........................................................................................ 15

STONEBARGER LAW
A Professional Corporation

# TABLE OF AUTHORITIES

**Federal Cases**

*City of Detroit v. Grinnell Corporation,*
495 F.2d 448 (2nd Cir. 1974) .................................................................. 11

*Dennis v. Kellogg Co.,*
697 F.3d 858 (9th Cir. 2012) ............................................................... 4, 5

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ................ 11

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ............................................................ 9, 10

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ................................................................... 9

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 1981) ................................................................. 14

*In re Immune Response Secs. Litig.,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................... 12

*Jordan v. County of Los Angeles,*
669 F.2d 1311 (9th Cir. 1982),
vacated on other grounds 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) ...... 8

*Lerwill v. Inflight Motion Pictures, Inc.,*
582 F.2d 507 (9th Cir. 1978) ................................................................... 9

*Linney v. Cellular Alaska P'ship,*
1997 WL 450064 (N.D. Cal. 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998) ........... 10, 11, 13, 14

*Morales v. Stevco, Inc.,*
2012 U.S. Dist. LEXIS 68640 (E.D. Cal. 2012)....................................... 7, 8

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950)............................................................................... 5

*Nachshin v. AOL, LLC,*
663 F.3d 1034 (9th Cir. 2011) ................................................................. 4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004)............................................................. 7

*Rodriguez v. West Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ................................................................. 10

*Schwartz v. Harp,*
108 F.R.D. 279 (C.D. Cal. 1985).............................................................. 9

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................. 5

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301, 1308 (9th Cir. 1990) ...................................................... 4

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................. 7

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ......................................................................... 8

**State Cases**

*Florez v. Linens 'N Things*,
   108 Cal.App.4th 447 (2003) ................................................................ 11

*Pineda v. Williams-Sonoma Stores, Inc.*,
   51 Cal.4th 524 (2011) .......................................................................... 11

*Wershba v. Apple Computer, Inc.*,
   91 Cal.App.4th 224 (2001) .................................................................. 14

**Federal Statutes**

28 U.S.C. § 1715(b) ................................................................................... 14

**State Statues**

Cal. Civ. Code § 1747.08 ................................................................... passim

**Federal Rules**

Fed. R. Civ. P. 23 .............................................................................. passim

**Miscellaneous Authorities**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions,
   § 11:50 (4th ed. 2002) ......................................................................... 13

7A Wright & Miller, Federal Practice & Procedure,
   § 1778 (2d ed. 1986) ........................................................................... 10

Manual for Complex Litigation (Third),
   § 30.41 (1995) ...................................................................................... 7

STONEBARGER LAW
A Professional Corporation

1    Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff respectfully submits this

2 memorandum of points and authorities in support of their Motion for Final Approval of Class

3 Action Settlement.

4 **I.    BACKGROUND**

5    **A.    The Alleged Violation and Litigation**

6    Plaintiffs contend that Defendant Wal-Mart Stores, Inc. ("Defendant" or "Wal-Mart")

7 violated California Civil Code section 1747.08 ("Section 1747.08") by requesting and recording

8 personal identification information from customers in conjunction with credit card transactions

9 in its California retail stores.  Wal-Mart denies all claims of wrongdoing and asserts several

10 affirmative defenses on the grounds that it did not violate the Song-Beverly Credit Card Act or

11 any other laws relating to its alleged conduct.

12    **B.    The Main Action**

13    On or about March 9, 2011, Plaintiff Kimberley Main filed a class action complaint in the

14 San Francisco County Superior Court entitled *Kimberley Main, individually, and on behalf of all*

15 *others similarly situated, v. Wal-Mart Stores, Inc., et al.*, Case No. CGC-11-509011, in which

16 she alleged claims on her own behalf and on behalf of all others similarly situated for violations

17 of California's Song-Beverly Credit Card Act, Civil Code section 1747.08 (the "Main Action").

18    On April 20, 2011, Wal-Mart removed the Main Action, and on April 28, 2011, the Main

19 Action was reassigned to the Honorable Jeffrey S. White, District Judge for the United States

20 District Court for the Northern District of California, for all further proceedings and designated

21 as Case No. 3:11-cv-01919-JSW.

22    **C.    The Nelson Action**

23    On or about March 4, 2011, Plaintiff Robin Nelson filed a class action complaint in the

24 San Francisco County Superior Court entitled *Robin Nelson, individually and on behalf of all*

25 *others similarly situated, v. Wal-Mart Stores, Inc.*, Case No. CGC-11-508950, in which she

26 alleged claims on her own behalf and on behalf of all others similarly situated violations of

27 California's Song-Beverly Credit Card Act, Civil Code section 1747.08 (the "Nelson Action").

28 On April 25, 2011, Wal-Mart removed the Nelson Action, and on May 16, 2011, the Nelson

1  Action was ordered related to the Main Action and reassigned to the Honorable Jeffrey S. White

2  for all further proceedings.

3       **D.     The Grikavicius Action**

4       On or about February 14, 2011, Plaintiff Marylynn Grikavicius filed a class action

5  complaint in the San Francisco County Superior Court entitled *Marylynn Grikavicius, an*

6  *individual, on behalf of herself and all others similarly situated, v. Wal-Mart Stores, Inc., et al.,*

7  *inclusive*, Case No. BC454993, in which she alleged claims on her own behalf and on behalf of

8  all others similarly situated for violations of California's Song-Beverly Credit Card Act, Civil

9  Code section 1747.08 (the "Grikavicius Action"). On March 18, 2011, Wal-Mart removed the

10  Grikavicius Action, and on July 20, 2011, the Grikavicius Action was ordered related to the

11  Main Action and reassigned to the Honorable Jeffrey S. White for all further proceedings.

12       **E.     The Landeros Action**

13       On or about February 24, 2011, Plaintiff Lourdes Landeros filed a class action complaint

14  in the United States District Court for the Central District of California, Case No. 2:11-01635-

15  JSL-PJWx entitled *Lourdes R. Landeros, an individual, on behalf of all others similarly situated,*

16  *v. Wal-Mart Stores, Inc., et al.*, in which she alleged claims on her own behalf and on behalf of

17  all others similarly situated violations of California's Song-Beverly Credit Card Act, Civil Code

18  section 1747.08 (the "Landeros Action").  On June 20, 2011, the Landeros Action was ordered

19  related to the Main Action and reassigned to the Honorable Jeffrey S. White for all further

20  proceedings.

21       **F.     Court's Order Consolidating the Main, Nelson, Grikavicius and Landeros**
22  **Actions**

23       On November 28, 2011, the Honorable Jeffrey S. White entered an order consolidating

24  the Main Action, Nelson Action, Landeros Action and Grikavicius Action for all purposes as

25  *Kimberley Main v. Wal-Mart Stores, Inc., et al.*, Case No. 3:11-cv-01919-JSW (the

26  "Consolidated Action"). [Doc. No. 40]. On December 8, 2011, Plaintiffs Kimberley Main, Robin

27  Nelson, Marylynn Grikavicius and Lourdes Landeros filed a Consolidated Complaint in the

28  Consolidated Action alleging Wal-Mart violated the Song-Beverly Credit Card Act of 1971, Cal.

STONEBARGER LAW
A Professional Corporation

**2**

1    Civ. Code § 1747.08, *et seq.*  Plaintiffs Main, Nelson, Grikavicius and Landeros sought redress

2    on their own behalf and on behalf of other similarly situation consumers in California as a class

3    action. On December 27, 2011, Wal-Mart filed its Answer to the Consolidated Complaint.

4        **G.**    **The Heon Action**

5        On April 4, 2012, Plaintiff Tiffany Heon filed a putative class action complaint against

6    Wal-Mart in the United States District Court for the Northern District of California, entitled

7    *Tiffany Heon v. Wal-Mart Stores, Inc., et al.*, Case No. 3:12-cv-01681-MEJ, alleging Wal-Mart

8    violated the Song-Beverly Credit Card Act of 1971, Cal. Civ. Code § 1747.08, *et seq.* (the "Heon

9    Action").  On July 27, 2012, the Heon Action was ordered related to the Consolidated Action and

10   reassigned to the Honorable Jeffrey S. White for all further proceedings.

11       **H.**    **Settlement Negotiations and Mediation**

12       On April 16, 2012, after exchanging substantial formal discovery as to the scope of the

13   Class, the number of transactions at issue, and the merits of the claims, the Parties participated in

14   an all-day mediation session before Hon. Edward A. Infante (Ret.) of JAMS, an experienced

15   mediator.  Declaration of Gene J. Stonebarger in Support of Final Approval of Class Action

16   Settlement ("Stonebarger Decl.") at ¶3.  With the assistance of Hon. Edward A. Infante, a

17   settlement was reached as to all material terms on Class benefits and Notice. *Id.*  After the April

18   16, 2012 mediation session, a final settlement (the "Settlement Agreement") was reached. *Id.*

19   On November 9, 2012, the Parties fully executed the Settlement Agreement, and on January 22,

20   2013, this Court Preliminarily Approved the Settlement Agreement. *Id.*  In its Order, the Court

21   approved the proposed settlement and the form of Class Notice, and directed Wal-Mart to

22   provide Notice to the members of the Class.

23   **II.**    **THE PROPOSED SETTLEMENT**

24       **A.**    **Class Benefits**

25       Class members have been presented with the opportunity to submit a claim for a gift card.

26   The Settlement Administrator received 519 timely claims. Declaration of Charlene Young

27   ("Young Decl."), ¶10. Of the 519 timely claims, 206 listed a transaction that occurred while Wal-

28   Mart actively conducted its ZIP Code Survey. *Id.* at ¶11. Wal-Mart intends to provide all

STONEBARGER LAW
A Professional Corporation

claimants that submitted a timely claim with a $25 gift card, regardless of eligibility. Thus, the 519 individuals who timely submitted a claim will receive a $25 gift card within sixty (60) days after the Effective Date as provided in the Settlement Agreement, if final judicial approval is granted.  The gift cards will be freely transferable standard Wal-Mart gift cards with standard terms, including no expiration date; no fees or charges; redeemable for merchandise only, except where required otherwise by law; and redeemable at any Wal-Mart store.

Because the aggregate value of the claimants' benefit ($12,975.00[1]) is less than the minimum class benefit ($750,000.00) Wal-Mart agreed to pay, Wal-Mart will make *cy pres* donations.  A *cy pres* donation is routinely "[u]sed in lieu of direct distribution of damages to silent class members..." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). "[A] *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members." *Id.* Pursuant to the Settlement Agreement, Wal-Mart will make *cy pres* donations in the amount of $737,025.00[2]: $368,512.50 to the Consumer Federation of California and $368,512.50 to the Privacy Rights Clearinghouse.

The settlement provides monetary benefits to Class members in gift cards and *cy pres* donations valued at $750,000.00.

### B.   *Cy Pres* Beneficiaries

As stated above, Wal-Mart will make *cy pres* donations to the Consumer Federation of California and the Privacy Rights Clearinghouse, which are appropriate beneficiaries.

Under Ninth Circuit precedent, there should be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis*, 697 F.3d at 865. In determining whether a *cy pres* beneficiary is appropriate the Court is "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011), and must not benefit a group "too remote from the plaintiff class." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990); *see also Nachshin*, 663 F.3d at 1040 (the *cy pres* distribution should "target the plaintiff class...").

---

[1] $25 gift card x 519 Claims = $12,975.00.
[2] $750,000 (Minimum Class Benefit) - $12,975 (Claimed Benefit) = $737,025.00.

4

STONEBARGER LAW
A Professional Corporation

1   At its core, the instant case is focused on protecting the privacy rights of California

2   consumers by enforcing California Civil Code Section 1747.08 which seeks to protect the

3   individual privacy of consumers by prohibiting merchants from collecting customer personal

4   identification information during credit card purchase transactions; and, by providing consumers

5   a remedy when the statute is violated.  The objectives of the statute and the interests of absent

6   class members are co-extensive with one another.

7   The protection of consumer privacy is at the very heart of the Consumer Federation of

8   California and the Privacy Rights Clearinghouse.  For instance, the Consumer Federation of

9   California is a non-profit advocacy organization that devotes its resources to "campaign[ing] for

10  state and federal laws that place consumer protection ahead of corporate profit" which includes

11  laws aimed at "protecting consumer financial privacy." Stonebarger Decl. at Exh. 'A'. Likewise,

12  the Privacy Rights Clearinghouse is a California nonprofit corporation, which, among others,

13  identifies its goals as being: (i) to raise consumers' awareness of how technology affects personal

14  privacy; (ii) empower consumers to take action to control their own personal information by

15  providing practical tips on privacy protection; and (iii) respond to specific privacy-related

16  complaints from consumers, and when appropriate, intercede on their behalf and/or refer them to

17  the proper organizations for further assistance. *See id*. at Exh. 'B'.  Thus, the Consumer

18  Federation of California and the Privacy Rights Clearinghouse are appropriate *cy pres*

19  beneficiaries.

20  **C.     Notice of the Settlement to Class Members**

21  Rule 23(e)(1) of the Federal Rules of Civil Procedure requires class members to receive

22  notice of a settlement "in a reasonable manner." Class members need not receive "actual notice."

23  *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).  Instead, notice may be provided in a

24  manner "reasonably calculated, under all the circumstances, to apprise interested parties of the

25  pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

26  *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

27  In compliance with the Court's Preliminary Approval Order dated January 22, 2013 [Doc.

28  No. 70], Wal-Mart provided notice to the Class in three ways: In-Store Notice, Notice by

STONEBARGER LAW
A Professional Corporation

5

Publication, and Website Notice. The Class Notice ("Notice") described, inter alia, the claims in the lawsuit, the terms of the Settlement, and the procedures for objecting to the Settlement and for electing to be excluded from the Class and the Settlement.  The Notice also informed Class members that they are permitted to appear at the Fairness Hearing on May 24, 2013, either with or without counsel.  Wal-Mart provided Class Members with sufficient notice of the Settlement.

### 1.   In-Store Notice

From March 14, 2013 through April 29, 2013, Wal-Mart conspicuously displayed the tear-away notices (Exhibit '2' to Young Decl.), in pads of 300, at the customer service desk of every Wal-Mart store located in California. *See* Declaration of Erica Mooring ("Mooring Decl.") at ¶¶2, 6, 17; Young Decl. at ¶5.

### 2.   Notice by Publication

On February 14, 2013, and once a week thereafter for two more consecutive weeks, the Settlement Administrator arranged to have the Short-Form Notice (Exhibit '1' to Young Decl.) published in the Los Angeles and San Francisco regional print markets of USA Today. *See* Young Decl. at ¶4.

### 3.   Website Notice

On January 25, 2013, the Settlement Administrator established a settlement website, located at www.WalMartClassActionSettlement.com (the "Settlement Website"), which contains information relating to the settlement, including the Detailed Notice, Claim Form, and Preliminary Approval Order. Young Decl. at ¶2.  The Settlement Website has and will remain live through the Effective Date as provided in the Settlement Agreement. *Id.* at ¶3.

### D.   Objections to and Exclusions from the Settlement

Pursuant to the Court's Preliminary Approval Order, Class Members were required to file and postmark objections to the proposed settlement on or before April 29, 2013 [Doc. No. 72]. Similarly, Class Members were required to mail a letter electing to exclude themselves from the Class on or before April 29, 2013.  *Id.*  There have been no objections and only three (3) requests to be excluded.  Stonebarger Decl. at ¶7; Young Decl. at ¶13.

/ / /

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL

**E.     Payments to Named Plaintiffs Not Serving as Class Representatives**

In consideration for the General Release of the named Plaintiffs Kimberley Main, Marylynn Grikavicius, and Lourdes Landeros, Wal-Mart agrees to pay each one thousand dollars ($1,000) to resolve their individual claims.

**F.     Attorneys' Fees, Costs and Incentive Fee Awards**

The Preliminary Approval Order appointed Plaintiffs Robin Nelson and Tiffany Heon as the Class representatives, and the law firms of Stonebarger Law, APC, Westrup Klick LLP, Patterson Law Group, APC, and Hoffman Libenson Saunders & Barba (formerly Hoffman & Lazear), and Morris and Associates as Class Counsel.

Plaintiffs filed their Motion for Attorneys' Fees, Costs and Incentive Awards on April 8, 2013, seventy-five (75) days after the entry of the Preliminary Approval Order. Class representatives applied for incentive awards of $3,500 to each of them, and $420,000 to Class Counsel. There have been no objections to the requested awards.

**III.     ARGUMENT**

**A.     The Court Should Approve the Proposed Settlement Because a Class Exists, and the Proposed Settlement is Fair, Adequate, and Reasonable.**

Court approval is required for any settlement agreement that will bind class members. *See* Fed. R. Civ. P. 23(e).  Generally, class-settlement approval is a two-step process: (1) the Court evaluates whether a class exists; and (2) the Court determines whether the proposed settlement is fundamentally fair, adequate, and reasonable. *Morales v. Stevco, Inc.*, 2012 U.S. Dist. LEXIS 68640, at *16 (E.D. Cal. 2012) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (internal citations omitted)); *see also* Fed. R. Civ. P. 23(e)(2).  After a grant of preliminary approval, notice is directed to the class members, and then the Court holds a fairness hearing, where it considers any objections from class members and decides whether to grant final settlement approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (*citing* Manual for Complex Litigation (Third) § 30.41 at 236-37 (1995)).

/ / /

/ / /

/ / /

STONEBARGER LAW
A Professional Corporation

7

1.   **A Class Exists, Satisfying the First Prong of the Settlement-Approval Analysis**

Class certification for settlement purposes should be granted because all the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied.  This Court preliminarily approved the Class defined in the Settlement Agreement.  [Doc. No. 70]  The Court defined the Class as follows:

> All persons who, between February 14, 2010 and November 30, 2010, used a credit card to make a purchase in a Wal-Mart store located in California while the ZIP Code Survey was active in that store, and whose personal ZIP code was requested and recorded as a result of the ZIP Code Survey.

a.   *Numerosity*

The class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable."  *Morales*, 2012 U.S. Dist. LEXIS 68640, at *18-19 (citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (finding that the numerosity requirement would have been "satisfied solely on the basis of the [110] ascertained class members" and listing multiple cases in which classes with fewer than 100 members were certified), *vacated on other grounds*, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982)).  Here, according to Wal-Mart, during the Class Period, hundreds of thousands of credit card transactions occurred in California stores during an active ZIP Code Survey.  As such, the numerosity requirement is satisfied.

b.   *Commonality*

There are questions of law and fact that are common to the Class.  *See* Fed. R. Civ. P. 23(a)(2).  Some of the common questions include whether Wal-Mart's policy and practice of requesting and recording customers' ZIP codes during purchase transactions, "ZIP Code Surveys", violate California Civil Code section 1747.08.  The common questions "must be of such a nature that [they are] capable of class-wide resolution—which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Here, the common questions go straight to the core of all of the Class Members' claims and answers to the

STONEBARGER LAW
A Professional Corporation

1    questions would resolve the suit.  Thus, the commonality requirement is met.

2                          **c.        *Typicality***

3           The Class representatives' claims are typical of the claims of the Class.  *See* Fed. R. Civ.

4    P. 23(a)(3).  Typicality is tested by determining "whether other members have the same or

5    similar injury, whether the action is based on conduct which is not unique to the named

6    plaintiffs, and whether other class members have been injured by the same course of conduct."

7    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (*quoting Schwartz v. Harp*, 108

8    F.R.D. 279, 282 (C.D. Cal. 1985)).  Here, all Class Members allege that, in violation of Section

9    1747.08, their personal identification information was requested and recorded by Wal-Mart

10   during a credit card transaction. As such, typicality exists.

11                   **d.      *Adequacy of Representation***

12          The Class representatives are required to "fairly and adequately protect the interests of

13   the class." Fed. R. Civ. P. 23(a)(4).  To determine adequacy, two questions must be resolved:

14   "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

15   members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

16   behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (*citing

17   Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  Here, Class

18   representatives and Class Counsel allege that each Class representative was asked for her

19   personal identification information during a credit card purchase transaction during the Class

20   Period.  These allegations are identical, and not antagonistic to, the claims of the Class.  Class

21   representatives have been actively involved in the litigation, and they, along with Class Counsel,

22   have acted in the Class members' best interests.  Further, as set forth in detail in the declarations

23   of Class Counsel in support of the Motion for Attorneys' Fees, Costs and Incentive Awards,

24   Class Counsel is very experienced in class action litigation, including class actions for violations

25   of Section 1747.08.  Representation of the Class is adequate.

26                   **e.      *Common Questions Predominate***

27          The final step in certification of this Settlement Class is to decide whether the common

28   questions of law and fact predominate over individual questions, and whether a class action is

STONEBARGER LAW
A Professional Corporation

9

STONEBARGER LAW
A Professional Corporation

1   superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). "When common

2   questions present a significant aspect of the case and they can be resolved for all members of the

3   class in a single adjudication, there is clear justification for handling the dispute on a

4   representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A Wright

5   & Miller, Federal Practice & Procedure § 1778 (2d ed. 1986)). Here, the common questions go

6   directly to the heart of the case, and the Court's ruling in favor of the Settlement will resolve the

7   claims for all Class Members. It follows that a class action is superior to other available methods

8   of resolution. Individual claims would be for such a small amount of damages that, "[e]ven if

9   efficacious, these claims would not only unnecessarily burden the judiciary, but would prove

10  uneconomic for potential plaintiffs." *See Hanlon*, 150 F.3d at 1023. The costs of individual

11  litigation "would dwarf potential recovery." *Id.* Thus, a class action will fairly and efficiently

12  adjudicate the controversy.

13              **2.     The Proposed Settlement is Fair, Adequate, and Reasonable**

14              In granting final approval of a settlement, the Court determines whether the "settlement,

15  taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g*

16  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon*, 150 F.3d at 1027). To reach this

17  determination, the Court must balance several factors that may include one or more of the

18  following: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

19  duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

20  (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

21  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

22  participant; and (8) the reaction of the class members to the proposed settlement. *Linney v.*

23  *Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Torrisi v. Tucson Elec.*

24  *Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (holding that only one factor was necessary to

25  demonstrate that the district court was acting within its discretion in approving the settlement).

26  Here, each relevant factor supports the conclusion that the Settlement is fundamentally fair,

27  adequate, and reasonable, and should be approved.

28  / / /

1     It is generally held that "the fact that the settlement agreement was reached in arm's

2  length negotiations after relevant discovery [has] taken place create[s] a presumption that the

3  agreement is fair." *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997),

4  *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (citing *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

5  (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)).  In this context "[i]t cannot be

6  overemphasized that neither the trial court in approving the settlement nor [an appellate court] in

7  reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues

8  of fact and law which underlie the merits of the dispute.  It is well settled that in the judicial

9  consideration of proposed settlements, 'the [trial] judge does not try out or attempt to decide the

10  merits of the controversy,' [citation] and the appellate court 'need not and should not reach any

11  dispositive conclusions on the admittedly unsettled legal issue.'" *City of Detroit v. Grinnell*

12  *Corporation*, 495 F.2d 448, 456 (2nd Cir. 1974).

13         a.    ***The strength of Plaintiffs' case and the risk, expense, complexity,***
            ***and likely duration of further litigation***
14

15     The core of Plaintiffs' claim is that Wal-Mart violated Section 1747.08 by requesting and

16  recording Class Members' personal identification information in conjunction with credit card

17  transactions.  Plaintiffs believe they have the evidence needed to establish a case against Wal-

18  Mart.  While Plaintiffs and Class Counsel contend their claims are meritorious, Wal-Mart has

19  raised, and would continue to raise, challenges to the legal and factual bases for such claims.  For

20  example, Plaintiffs contend that "requesting and recording a cardholder's [personal identification

21  information, ***without more***," violates Section 1747.08, and that a retailer cannot request personal

22  identification information from a credit card customer "even if the consumer's response was

23  voluntary and made only for marketing purposes." *Pineda v. Williams-Sonoma Stores, Inc.*, 51

24  Cal.4th 524, 527 (2011); *Florez v. Linens 'N Things*, 108 Cal.App.4th 447, 453 (2003).

25     Wal-Mart denies any wrongdoing in this case.  Wal-Mart contends: (1) the class claims

26  concern a survey conducted in some California Wal-Mart stores in 2010, for limited periods of

27  time as to each store, in which customers at checkout, regardless of tender type, were prompted

28  by a display on the debit/credit card keypad terminal to enter a ZIP code; (2) in the case of credit

STONEBARGER LAW
A Professional Corporation

**11**

STONEBARGER LAW
A Professional Corporation

1  card customers, the prompt was displayed only after the credit card transaction had been

2  authorized and the customer provided his or her signature completing the transaction; (3) the

3  survey did not require an actual ZIP code, could be bypassed, and therefore was voluntary; and

4  (4) information collected in the survey has not been used, nor could it be used, to personally

5  identify a customer.  Based on these contentions, Wal-Mart maintains that there is no liability

6  under section 1747.08 and that it would have a number of meritorious arguments in opposition to

7  class certification if the case proceeded to that stage.  Stonebarger Decl. at ¶4.

8      The uncertainty as to whether consumers' voluntariness constitutes an affirmative defense

9  creates substantial risk for both sides.  *Id.* at ¶5.  Plaintiffs and their counsel recognize and

10 acknowledge the expense and length of continued proceedings necessary to prosecute the

11 litigation against Wal-Mart through trial and through appeals.  *Id.* Plaintiffs and their counsel

12 also have taken into account the uncertain outcome and the risk of any litigation, especially in

13 complex actions such as this Class Action, as well as the difficulties and delays inherent in such

14 litigation.  *Id.*  This litigation involves complex class action issues, which would involve

15 protracted risky litigation if not settled.  *Id.*

16      "It is simply 'not appropriate for the court to attempt to settle these questions of law and

17 fact:…[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on

18 the merits.  Neither the trial court nor [the appellate court] is to reach any ultimate conclusions

19 on the contested issues of fact and law which underlie the merits of the dispute, *for it is the very*

20 *uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that*

21 *induce consensual settlements.'"  In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166,

22 1172 (S.D. Cal. 2007) (internal citations omitted).

23      Notwithstanding, "the merits of the underlying class claims are not a basis for upsetting

24 the settlement of a class action; the ***operative word is 'settlement.'"***  *7-Eleven Owners for Fair*

25 *Franchising vs. Southland Corporation,* 85 Cal. App. 4th 1135, 1150 (2000) (emphasis added).

26 Even "[t]he fact that a proposed settlement may only amount to a fraction of the potential

27 recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and

28 should be disapproved." *City of Detroit*, 495 F.2d at 455.  Courts have aptly held that "it is the

**12**

1  very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that

2  induce consensual settlements.  The proposed settlement is not to be judged against a

3  hypothetical or speculative measure of what might have been achieved by the negotiators."

4  *Linney*, 151 F.3d at 1242 (italics omitted).

5          Pursuant to California Civil Code section 1747.08(e), a violator of the statute shall be

6  liable for a civil penalty of up to $250.00 for the first violation and up to $1,000.00 for each

7  subsequent violation of the statute, to be paid to the cardholder.  Cal. Civ. Code § 1747.08(e).

8  Because of the broad range of civil penalties that could be awarded by the Court after a trial in

9  this case if Wal-Mart is found to have violated the statute, substantial risk exists for both sides.

10          The Settlement Agreement provides certainty and benefits to Plaintiffs and the Class

11  now, while resolution of the litigation and all appeals may take years and would provide no

12  guarantee of benefits.  The advantages of settlement outweigh the costs, risks, and potential for

13  delay, and the Settlement exemplifies an arms-length compromise that is fair and desirable to the

14  class.  *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:50 at 155 (4th

15  ed. 2002) ("In most situations, unless the settlement is clearly inadequate, its acceptance and

16  approval are preferable to lengthy and expensive litigation with uncertain results.").

17                        **b.**        ***The amount or type of relief offered in Settlement***

18          Given the strength of Plaintiffs' case and the risk, expense, complexity and duration of

19  further litigation, the amount and terms of the proposed monetary benefits are extremely

20  advantageous.  Wal-Mart will provide 519 individuals who submitted a timely claim with $25

21  gift cards and make *cy pres* donations in the amount of $737,025.00. The settlement provides

22  monetary benefits to Class members in gift cards and *cy pres* donations valued at $750,000.00.

23                        **c.**        ***The stage of litigation***

24          The Parties have engaged in formal discovery, allowing Class Counsel and counsel for

25  Wal-Mart to sufficiently evaluate their positions' strengths and weaknesses, and the probable

26  expense of taking this case to trial.  In any event, it is not the law that no class action can be

27  settled until the last particle of discovery has been completed and analyzed.  "[I]n the context of

28  class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where

STONEBARGER LAW
A Professional Corporation

**13**

1  the parties had sufficient information to make an informed decision about settlement... .

2  [N]otwithstanding the status of discovery, Plaintiffs' negotiators had access to a plethora of

3  information regarding the facts of their case.'" *Linney*, 151 F.3d at 1239-1240 (internal citations

4  omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)

5  ("It is true that very little formal discovery was conducted and that there is no voluminous record

6  in the case.  However, the lack of such does not compel the conclusion that insufficient discovery

7  was conducted.")  (Emphasis omitted.)).  Where, as here, a "plethora of information regarding

8  the facts of [the] case" was available, the settlement should be approved.

9             **d.**      **The experience and views of Class Counsel**

10        Class Counsel is very experienced in consumer class actions.  Attorneys at Stonebarger

11  Law, APC, Westrup Klick LLP, Patterson Law Group, APC, Hoffman Libenson Saunders &

12  Barba and Morris & Associates have represented millions of consumers in numerous consumer

13  class actions asserting violations of California's consumer-protection statutes, including the

14  Song-Beverly Credit Card Act of 1971.  *See* [Doc. No. 73-2]; [Doc. No. 73-2]; [Doc. No. 73-4];

15  [Doc. No. 73-5]; [Doc. No. 73-6].  Plaintiffs' attorneys are well qualified to conduct this

16  litigation and to assess its settlement value.  Defense counsel is also very experienced in the

17  prosecution and defense of class-action lawsuits.  Based on that experience, the Parties' counsel

18  agree that the proposed settlement is one that is fair and adequate to members of the Class.

19             **e.**      **The presence of a governmental participant**

20        There is no governmental entity participating in this matter, but Wal-Mart provided

21  notice of the Settlement to all appropriate state and federal authorities on November 19, 2012,

22  pursuant to CAFA (28 U.S.C. § 1715(b)).

23             **f.**      **The reaction of the Class Members**

24        A class action settlement may be presumed fair when there are only a small percentage of

25  objectors.  *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 245 (2001).  No Class

26  Members have objected to the Settlement, and only three (3) Class members requested to be

27  excluded from the Settlement. Stonebarger Decl. at ¶7; Young Decl. at ¶13.  The fact that no

28  objection has been filed weighs in favor of Settlement approval.

STONEBARGER LAW
A Professional Corporation

**14**

STONEBARGER LAW
A Professional Corporation

1

###### g.   *Lack of collusion between the Parties*

2   Proposed class settlements which are "negotiated at arm's length by counsel for the class"

3   are entitled to "an initial presumption of fairness." *See* Newberg on Class Actions Section 11:41

4   at 90.  Here, the proposed settlement is the product of extensive negotiations conducted at arm's-

5   length among counsel and a well-respected mediator.  Class Counsel and counsel for Wal-Mart

6   demonstrated that they were fully prepared to litigate this case through final judgment.  This

7   litigation has been hotly contested since its inception in March of 2011—there can be no

8   question of any collusion between counsel.

9   **B.   The Class Received Adequate Notice of the Settlement.**

10   Class Members must be given reasonable notice of any proposed settlement and the

11   Court should "direct to class members the best notice that is practicable under the circumstances,

12   including individual notice to all members who can be identified through reasonable effort." *See*

13   Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1).  The notice must "clearly and concisely state in plain,

14   easily understood language" the following: (i) the nature of the action; (ii) the Class definition;

15   (iii) the Class claims, issues, or defenses; (iv) that a Class Member may appear through counsel;

16   (v) that Class Members may exclude themselves and how to do so; and (vi) the binding effect of

17   a class judgment on Class Members.  *See* Fed. R. Civ. P. 23(c)(2)(B).

18   Here, the Notice approved by the Court's Preliminary Approval Order complied with all

19   of these requirements.  Wal-Mart delivered the court-approved Notices by conspicuously posting

20   the Short-Form Notice at the customer service desk in each of Wal-Mart's California retail stores

21   and by publishing the Short-Form Notice in the San Francisco and Los Angeles edition of USA

22   Today for three consecutive weeks.  Mooring Decl. at ¶6; Young Decl. at ¶¶4-5.  The Settlement

23   Website was also made available to Class members at WalMartClassActionSettlement.com.

24   Young Decl. at ¶2.  Thus, the three forms of Notice fairly and accurately informed the Class

25   members of the terms of the Settlement and provided sufficient opportunity for them to make

26   informed decisions regarding their rights.

27   **IV.   <u>CONCLUSION</u>**

28   The parties request that the Court grant final approval to the Settlement Agreement.

Dated: May 17, 2013

Respectfully Submitted,

STONEBARGER LAW, APC

WESTRUP KLICK LLP


By: /s/ Gene J. Stonebarger
    Gene J. Stonebarger
    *Interim Co-Lead Counsel for Plaintiffs*

    James R. Patterson (211102)
    jim@pattersonlawgroup.com
    PATTERSON LAW GROUP, APC
    402 West Broadway, 29th Floor
    San Diego, CA 92101

    *Attorneys for Plaintiff Kimberley Main*

    Chad A. Saunders (257810)
    cas@hlsblaw.com
    HOFFMAN LIBENSON SAUNDERS & BARBA
    300 Lakeside Drive, Suite 1000
    Oakland, CA 94612

    *Attorneys for Plaintiff Lourdes R. Landeros*

    Stephen Morris (126192)
    morris@sandiegolegal.com
    MORRIS & ASSOCIATES
    444 West C Street, Suite 300
    San Diego, CA 92101

    *Attorneys for Plaintiff Tiffany Heon*

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL