Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
Elaine W. Yan, State Bar No. 277961
eyan@stonebargerlaw.com
STONEBARGER LAW
A Professional Corporation
75 Iron Point Circle, Ste. 145
Folsom, CA 95630
Telephone (916) 235-7140
Facsimile (916) 235-7141

Mark L. VanBuskirk, State Bar No. 190419
mvanbuskirk@wkalaw.com
R. Duane Westrup, State Bar No. 58610
moats@westrupklick.com
WESTRUP KLICK LLP
444 W. Ocean Blvd., Suite 1614
Long Beach, CA 90802
Telephone (562) 432-2551
Facsimile (562) 435-4856

*Interim Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KIMBERLEY MAIN, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a Delaware corporation, and DOES 1 through 50 inclusive<br><br>Defendants. | Consolidated Case No. C 11-01919 JSW<br><br>Consolidated with:<br>Case No. C 11-02001 JSW<br>Case No. C 11-02893 JSW<br>Case No. C 11-02659 JSW<br><br>**DECLARATION OF ERICA MOORING REGARDING NOTICE OF CLASS ACTION SETTLEMENT**<br><br>Date:   May 24, 2013<br>Time:   9:00 a.m.<br>Ctrm.:   11, 19th Floor<br>Judge:   Hon. Jeffrey S. White |

DECLARATION OF ERICA MOORING REGARDING NOTICE OF CLASS ACTION SETTLEMENT

## DECLARATION OF ERICA MOORING

I, Erica Mooring, hereby declare as follows:

1. I am employed by Anderson Merchandisers ("Anderson") as an Executive Assistant/Client Services Project Manager. Anderson provides a variety of services tailored to connecting consumer brands to shoppers throughout Wal-Mart's stores including, among other things, distributing, displaying and maintaining signage in Wal-Mart's stores nationwide. Anderson was retained by Wal-Mart in connection with the settlement of the *Main v. Wal-Mart Stores, Inc.* litigation to manage the distribution of the in-store tear-away notices in each of Wal-Mart's 221 California stores and to monitor the display of the tear-away notices at each store's customer service desk throughout the period beginning on or about March 5, 2013 through April 29, 2013. I was chiefly responsible for communicating with Anderson's in-store representatives that monitored the installation and display of the tear-away notices. Except as otherwise indicated, I have personal knowledge of the matters set forth in this declaration and if called to testify, I could and would testify competently to such matters.

2. The tear-away notices were provided to Anderson by the Settlement Administrator, Rust Consulting, in pads of 300 tear-away notices, together with an easel for displaying the tear-away pads upright at the customer service desk of each of Wal-Mart's California stores.

3. In connection with distributing the tear-away pads, Anderson's in-store representatives personally met with store managers and provided them with a letter of authorization which confirmed that Anderson had been engaged to provide the services described in paragraph 1. The representatives then worked with the store manager in each of Wal-Mart's California stores to install the tear-away pads in a conspicuous location at the store's customer service desk.

4. Anderson's in-store representatives conducted weekly visits to each of Wal-Mart's California stores. The representatives were tasked with: (1) confirming that the tear-away pads were still installed at the customer service desk; (2) taking a picture of the tear-away pad display; (3) determining approximately how many notices remained on the tear-away pad displayed

at the customer service desk; and (4) inquiring whether the store needed replenishment of the tear-away pads.

5. In connection with personally delivering and supervising the installation of the tear-away pads, Anderson's in-store representatives prepared and submitted reports to me regarding the status of the installation process at each of Wal-Mart's California stores.

6. The reports submitted to me by Anderson's representatives indicated that installation of the tear-away pads in each of Wal-Mart's 221 California stores was completed as of March 14, 2013.

7. On March 18, 2013, Anderson representatives began conducting weekly visits to each of Wal-Mart's California stores to monitor the display of the tear-away pads.

8. In connection with conducting these weekly visits, Anderson's representatives were required to prepare and submit weekly reports to me regarding the status of the tear-away pads displayed in each California store and whether any stores needed replenishment of the tear-away pads.

9. The weekly reports submitted for the week of March 18 through March 25 indicated that tear-away pads were still displayed at the customer service desk in all but three of Wal-Mart's 221 California stores. As to those three stores, steps were immediately taken to have tear-away pads re-installed.

10. On March 26, 2013, I received an inquiry from Wal-Mart regarding a report received from a putative class member indicating that a tear-away pad was not displayed at the Wal-Mart store located at 5095 Almaden Expressway, San Jose, CA ("Store 5884"). After receiving the inquiry, I instructed the Anderson representative tasked with monitoring Store 5884 to return to the store to check the status of the tear-away pad. After conducting a visual inspection of the customer service desk at Store 5884, the Anderson representative reported to me that the tear-away pad was displayed at the customer service desk, but had been moved so that it would not interfere with the processing of merchandise returns. The Anderson representative moved the tear-away pad back to a more conspicuous location at the customer service desk and advised the store manager that the pad must remain displayed in a location where it would be visible to customers.

11. The weekly reports submitted for the week of March 25 through April 1 indicated that tear-away pads were still displayed at the customer service desk in all but five of Wal-Mart's 221 California stores. As to those five stores, steps were immediately taken to have tear-away pads re-installed.

12. The weekly reports submitted for the week of April 1 through April 8 indicated that tear-away pads were still displayed at the customer service desk in all but eight of Wal-Mart's 221 California stores. As to those eight stores, steps were immediately taken to have tear-away pads re-installed.

13. The weekly reports submitted for the week of April 8 through April 15 indicated that tear-away pads were still displayed at the customer service desk in all but one of Wal-Mart's 221 California stores. As to that store, steps were immediately taken to have a tear-away pad re-installed.

14. The weekly reports submitted for the week of April 15 through April 22 indicated that all stores still had tear-away pads displayed at the customer service desk.

15. On April 24, 2013, I received another inquiry from Wal-Mart regarding a report received from a putative class member indicating that the tear-away pad installed at Store 5884 was no longer displayed at the customer service desk. After receiving the inquiry, I instructed the Anderson representative tasked with monitoring Store 5884 to return to the store to check the status of the tear-away pad. After visually inspecting the customer service desk at Store 5884, the Anderson representative reported to me that the tear-away pad was at the customer service desk, but had been moved to a location where it might not be readily visible to customers. For that reason, the Anderson representative moved the pad to a more conspicuous location at the customer service desk and reminded the store manager that the pad must remain displayed in a location where it would be visible to customers.

16. On or about April 24, 2013, I received reports from some Anderson representatives that some stores had begun removing the tear-away pads from the customer service desk because the notices indicated the claims period expired on April 22, 2013. After consulting with Wal-Mart regarding the reports I received, I was informed that Wal-Mart had circulated a

communication to all California store managers advising them that the tear-away pads were to remain posted at the customer service desk through April 29, 2013 because the notice and claims period had been extended to that date. In fact, reports I received from Anderson's representatives indicated that the tear-away pads remained displayed at the customer service desk in all but eight of Wal-Mart's 221 California stores through April 29, 2013. As to those eight stores, it appeared that the tear-away pads had been discarded on or around April 22, 2013 and, by the time this was discovered, there was not sufficient time to send and re-install replacement pads in these stores.

17. On April 29, 2013, Anderson's representatives were instructed to remove the tear-away pads from the customer service desks of each store.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this [ ] day of May, 2013 in Amarillo, Texas.

By _/s/ Erica Mooring_
Erica Mooring